JOURNAL ENTRY AND OPINION
{¶ 1} Ramel Thomas ("Thomas") appeals from his conviction received in the Cuyahoga County Court of Common Pleas. Thomas argues that the State of Ohio ("State") supplied insufficient evidence to support his conviction, and that his conviction is against the manifest weight of the evidence. For the following reason, we affirm the decision of the trial court.
 {¶ 2} On December 5, 2004, Earl Brown ("Brown") awoke to a loud noise outside his apartment building located on Chagrin Boulevard in Beachwood, Ohio. Brown looked out his window and saw a car crash into construction equipment behind his apartment building. Brown called police and remained on the telephone until they arrived. Brown stated that just before police arrived, the driver of the vehicle started walking away from the car.
 {¶ 3} Beachwood Police Officer Chris Atterbury ("Officer Atterbury") arrived and intercepted Thomas as he walked away from the wrecked vehicle. Officer Atterbury stated that Thomas seemed lethargic and he had glassy, bloodshot eyes and slurred speech. As a result of these observations, Officer Atterbury conducted a field sobriety test and ultimately placed Thomas under arrest for operating a motor vehicle while intoxicated. During a patdown search of Thomas, Officer Atterbury recovered the keys to the wrecked car in Thomas's pocket. Officer Atterbury also stated that he ran the plates to the maroon 1992 Chevy Lumina and noted that they were registered to a Volvo.
 {¶ 4} The following day, Beachwood Detective Alan Baumgartner ("Detective Baumgartner") received the case and attempted to determine who owned the vehicle. After searching the bureau of motor vehicle records, Detective Baumgartner learned that Vincent Licata turned over the 1992 Chevy Lumina to Ride Now Auto, who in turn, sold the vehicle to Euclid Auto Sales. Detective Baumgartner determined that, at the time of the car accident, Euclid Auto Sales owned the vehicle.
 {¶ 5} Detective Baumgartner spoke with Michael Sims ("Sims"), co-owner of Euclid Auto Sales, and learned that Sims did not know Thomas, that Thomas had no reason to possess the 1992 Chevy Lumina, and that he wanted to press charges against Thomas. Sims testified that he had purchased the vehicle at auction and was planning to sell it for approximately $1,000. Sims reported that before he could sell the vehicle it needed repairs. Sims contacted Corey Beachum ("Beachum"), a freelance tow truck driver, to tow the vehicle to a repair shop located on East 93 Street and Raymond. When Beachum towed the vehicle to the repair shop, there were no plates on the vehicle. Sims stated that Beachum has no authority to sell any vehicles and that all sales go directly through Euclid Auto Sales.
 {¶ 6} Detective Baumgartner also spoke with Thomas while he was in custody. Thomas stated that he got the car from his friend Corey Beachum ("Beachum") from a dealership. However, Thomas could not produce a title or receipt for the vehicle and never actually told Detective Baumgartner that he purchased the vehicle.
 {¶ 7} Both Beachum and Thomas gave differing versions of what happened with the Chevy Lumina. Beachum stated that while he was at the repair shop, Thomas approached and began talking with him about purchasing a vehicle. Beachum told Thomas that the 1992 Chevy Lumina was for sale and that if he purchased it from Euclid Auto Sales, he would receive a referral fee. Beachum stated that while Thomas was nearby, he called Sims and told him that the repairs on the Lumina were complete and that he would tow the vehicle back to Euclid Auto Sales and put the keys over the visor. Beachum stated that there were no license plates on the Lumina when he towed the vehicle back to Euclid Auto Sales. Beachum stated that he and Thomas parted ways, he towed the vehicle back to Euclid Auto Sales, left the keys over the visor and never saw the vehicle again. Beachum stated that he did not sell the vehicle to Thomas. Additionally, Beachum testified that as he walked into the courtroom, Thomas stated "help me out man."
 {¶ 8} Thomas claimed that he knew Beachum was a tow-truck driver but that he thought he was also a car dealer. Thomas met Beachum at the repair shop on East 93 Street and spoke with Beachum about purchasing the 1992 Chevy Lumina. Thomas decided to purchase the car so he gave Beachum $400. Thomas stated that when he gave Beachum the remaining $300 he would receive the title to the vehicle. However, Thomas admitted that he had previously purchased vehicles and received the title at the time of purchase. Thomas reported that there were license plates on the vehicle at the time of purchase but admitted that they did not belong to him. Thomas also admitted that he did not have a valid drivers license at the time of purchase. Thomas also stated that he knew the repair shop was not a car dealership and that Beachum did not work at the repair shop, but he claimed that he trusted Beachum. Thomas admitted that on the night of the accident, he was driving drunk with a suspended license. Finally, Thomas denied that he ever said anything to Beachum in court.
 {¶ 9} On July 18, 2005, a Cuyahoga County grand jury returned a one-count indictment charging Thomas with receiving stolen property motor vehicle. Thomas pleaded not guilty, and his jury trial commenced on October 3, 2005. In support of its case, the State called Brown, Officer Atterbury, Detective Baumgartner, Sims, and Beachum. Thomas testified for the defense. After hearing the evidence and deliberating, the jury returned a verdict of guilty to receiving stolen property motor vehicle, a fourth degree felony. On October 6, 2005, the trial court sentenced Thomas to a seventeen-month term of incarceration.
 {¶ 10} Thomas appeals, raising the two assignments of error contained in the appendix to this opinion.
 {¶ 11} In his first assignment of error, Thomas argues that the State of Ohio failed to present sufficient evidence that he committed the crime of receiving stolen property motor vehicle. In his second assignment of error, Thomas argues that his conviction is against the manifest weight of the evidence. Although these arguments involve different standards of review, we will consider them together because we find the evidence in the record applies equally to both.
 {¶ 12} The standard of review with regard to the sufficiency of the evidence is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, as follows:
"Pursuant to Criminal Rule 29(A), a court shall not order anentry of judgment of acquittal if the evidence is such thatreasonable minds can reach different conclusions as to whethereach material element of a crime has been proved beyond areasonable doubt."
 {¶ 13} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiencyof the evidence to support a criminal conviction is to examinethe evidence submitted at trial to determine whether suchevidence, if believed, would convince the average mind of thedefendant's guilt beyond a reasonable doubt. The relevant inquiryis whether, after viewing the evidence in a light most favorableto the prosecution, any rational trier of fact could have foundthe essential elements of the crime proven beyond a reasonabledoubt." (Citation omitted.)
 {¶ 14} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of thegreater amount of credible evidence offered in a trial, tosupport one side of the issue rather than the other. It indicatesclearly to the jury that the party having the burden of proofwill be entitled to their verdict, if, on weighing the evidencein their minds, they shall find the greater amount of credibleevidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on itseffect in inducing belief.'
 * * * The court, reviewing the entire record, weighs theevidence and all reasonable inferences, considers the credibilityof witnesses and determines whether in resolving conflicts in theevidence, the jury clearly lost its way and created such amanifest miscarriage of justice that the conviction must bereversed and a new trial ordered. The discretionary power togrant a new trial should be exercised only in the exceptionalcase in which the evidence weighs heavily against theconviction." Id. at 387. (Internal citation omitted.)
 {¶ 15} However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt. State v. DeHass (1967), 10 Ohio St.2d 230, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the a new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." State v. Lindsey,87 Ohio St.3d 479, 483, 2000-Ohio-465. (Internal citation omitted.)
 {¶ 16} The jury found Thomas guilty of receiving stolen property motor vehicle, which pursuant to R.C. 2913.51 provides as follows:
"No person shall receive, retain, or dispose of property ofanother knowing or having reasonable cause to believe that theproperty has been obtained through commission of a theftoffense."
 {¶ 17} In his appellate brief, Thomas maintains that the evidence failed to demonstrate that he knew or had reasonable cause to believe that the 1992 Chevy Lumina was stolen. Specifically, Thomas claims that because the State failed to present evidence that the vehicle was stolen, his convictions must be reversed. Thomas argues that the only evidence to support the State's claim that the vehicle was stolen came through the inadmissible hearsay testimony of Detective Baumgartner. However, in putting forth the hearsay argument, Thomas failed to separately brief and argue the issue as required by App.R. 16(A) and App.R. 12(A)(2).
 {¶ 18} Viewing the evidence in the light most favorable to the prosecution, the testimony of Officer Atterbury, Detective Baumgartner, Sims, and Beachum, supports the determination by the finder of fact that Thomas did, in fact, receive or retain the property of another knowing, or having reasonable cause to believe, that the property had been obtained through commission of a theft offense. Officer Atterbury testified that he arrested Thomas after he crashed a 1992 Chevy Lumina while driving drunk without a valid license. Detective Baumgartner testified that bureau of motor vehicle records showed that Euclid Auto Sales owned the vehicle on December 5, 2004. Sims stated that he had purchased the vehicle, ordered repairs on the vehicle, and that Thomas has no right to possess the vehicle. Additionally Beachum testified that he told Thomas that the vehicle belonged to Euclid Auto Sales and that Thomas overheard him tell Sims that he would place the keys over the visor. Even if we were to address Thomas's hearsay argument, the testimony of Sims and Beachum establish that Thomas knew, or reasonably should have believed that the vehicle belonged to Euclid Auto Sales. Clearly, a review of the record demonstrates that any rational trier of fact could have found from the evidence presented that the essential elements of the offense of receiving stolen property were proven beyond a reasonable doubt.
 {¶ 19} We further find that Thomas's conviction is not against the manifest weight of the evidence. Though Thomas argues that his version of the events between him and Beachum should have been relied upon, the trier of fact is in the best position to weigh the evidence and the credibility of witnesses. The jury heard both Thomas and Beachum testify and determined that Beachum made the more credible witness. We cannot disagree. As the reviewing court, we find that the trier of fact did not lose its way and create a manifest miscarriage of justice by convicting Thomas of receiving stolen property motor vehicle.
 {¶ 20} Thomas's first and second assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, P.J., and Blackmon, J., concur.
 Appendix Assignments of Error: "I. Defendant's motion for a judgment of acquittal should havebeen granted because the state failed to meet the burden ofproduction with sufficient evidence to show that defendantknowingly possessed a stolen motor vehicle and because the onlyprobative evidence to show that the motor vehicle was stolen wasinadmissible, testimonial hearsay.
 II. The instant conviction for receiving stolen property isagainst the manifest weight of the evidence because the recorddoes not contain any admissible evidence to prove that the motorvehicle in question was actually stolen. The only probativeevidence to show that the motor vehicle was stolen wasinadmissible, testimonial hearsay."